## COMMONWEALTH vs. JOHN MELO.

No. 05-P-871.

Bristol. February 9, 2006. - August 9, 2006.

Present: BECK, COWIN, & GRAHAM, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Instructions to jury. *Attorney at Law,* Admission to practice.

The representation of a criminal defendant by an attorney who was not authorized to practice law in Massachusetts, but who was admitted to the bar of another State, was not of a character that by itself required relieving the defendant of an otherwise just conviction on the ground that the representation denied the defendant his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. [74-75]

A criminal defendant failed to demonstrate that his trial counsel provided constitutionally ineffective assistance in failing to object to the testimony of a certain witness, followed by contradictory testimony of a second witness, where the Commonwealth permissibly called the first witness for a substantive purpose, and thereafter was entitled to introduce, for impeachment purposes, the testimony of the second witness [75-78]; likewise, the defendant failed to demonstrate that trial counsel was ineffective in failing to object to the judge's refusal to excuse two jurors who would not state unequivocally that they could be impartial, where the defendant did not include in the record an affidavit from trial counsel showing what his reasoning on the subject might have been, and there was no indication whether the defendant retained any peremptory challenges at the time one of the jurors was seated [78-79]; finally, there was nothing in the record suggesting that trial counsel's strategic decision to offer alternative defenses, a common practice, was manifestly unreasonable [79].

At a criminal trial, the judge's slip of the tongue while giving an instruction to the jury (erroneously assuming the conclusion that the defendant was the individual who left the vehicle in question on the night in question, when that disputed identification was at the heart of the case) did not create a substantial risk of a miscarriage of justice, where the instructions as a whole were correct, and there could have been no doubt in the minds of the jurors that the case involved an identification dispute. [79-80]

INDICTMENT found and returned in the Superior Court Department on November 22, 1995.

A motion for a new trial, filed on September 22, 2004, was heard by *Richard F. Connon, J.*

*Ryan M. Schiff* for the defendant.

*Thomas R. Hunt,* Assistant District Attorney, for the Commonwealth.

COWIN, J. On October 1, 1996, the defendant was convicted by a jury of unlawful possession of a class A substance (i.e., heroin) with intent to distribute, G. L. c. 94C, § 32. He failed to prosecute an otherwise timely appeal from the judgment, and the appeal was dismissed pursuant to Standing Order 17A of this court. Approximately eight years after his conviction, on September 22, 2004, the defendant filed a motion for a new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), which was denied by the motion judge, who had also been the trial judge, without a hearing. The defendant's motion for findings of fact and conclusions of law was also denied, and the defendant's appeal from the denial of his new trial motion brings the case here.

The defendant asserts that it was error to deny him a new trial on multiple grounds, arguing that he was deprived of his right to counsel because his trial attorney was not authorized to practice law in Massachusetts; his trial counsel was ineffective in several respects; and there was an error in the jury instructions that created a substantial risk of a miscarriage of justice. We are not persuaded that the defendant is entitled to a new trial on any of these grounds. Because the motion judge did not abuse his discretion or commit other error of law, see *Commonwealth* v. *Wheeler,* 52 Mass. App. Ct. 631, 635 (2001), we affirm the order denying the motion.

1. *The trial.* There was testimony at the trial that, on September 7, 1995, State Trooper Roger Manny, observing a blue Chevrolet automobile traveling on Route 195 at a high speed, pursued the vehicle until it left the highway and pulled into a parking lot. Manny pulled up behind the vehicle; the driver left the vehicle and then did a slow run into the woods. The trooper subsequently identified the defendant as the driver. Because there was a second man in the vehicle, Manny did not follow the fleeing driver, but instead turned his attention to the

passenger, whom he placed in his cruiser while he ran a warrant check.

The check indicating that there was an outstanding warrant on the passenger, Manny placed him under arrest. An inventory search of the vehicle disclosed heroin packages under the front seat. A "drug ledger" was also found on the passenger's person. Upon determining that the Chevrolet was registered to one Kimberly A. Melo, Manny looked for her at her parents' home, but she was not present. While Manny was there, however, her parents showed him a family photograph containing a picture of the defendant, whom Manny recognized as the operator of the vehicle who had fled.

The Commonwealth called as a witness Kimberly Melo, who testified that the vehicle in question did in fact belong to her and that the defendant was her brother. She went on to state that, on the evening in question, she had lent the car to a friend, Eric Fontaine, but that he had not returned it. She testified that her then boyfriend (now her husband), as well as Eric Fontaine, told her that "a black guy was in my car with drugs," and that the car was at the police station. Fearful that she would be arrested, she waited a week and then, advised to do so by the defendant's trial counsel, called the State police barracks and was told that she was not subject to arrest and could pick up the car at any time. She denied telling anyone that her brother had been using the vehicle.

Following the conclusion of her testimony, the Commonwealth called Trooper Harvey D. Bigelow, Jr. Bigelow testified that, on the day following impoundment of the vehicle, a female identifying herself as Kimberly Melo called the State police barracks, spoke to Bigelow, and asked if he knew where her car was. He was unable to find a reference to it in the various journals, and so informed the caller. To that, the caller replied, "It may be under my brother John Melo's name. He was driving it." Bigelow insisted that the call came a day after impoundment of the car, and not a week later. There was no objection by defense counsel to the admission of the testimony of Kimberly Melo or Trooper Bigelow and no request that the judge give a limiting instruction.

At trial, the defendant was represented by Attorney John M.

Cicilline, a member of the Rhode Island bar. Cicilline was not licensed to practice law in Massachusetts, nor was he admitted specially for purposes of the case.

2. *Representation by unlicensed attorney.* Because Attorney Cicilline was not authorized to practice law in the Commonwealth, the defendant contends that he was denied his right under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to the effective assistance of counsel, and therefore the conviction must be reversed regardless of the quality of representation that Cicilline provided. In so arguing, the defendant essentially invokes a "per se" rule that has been rejected in cases of this nature. A per se rule may apply where "the person who represented the defendant at trial had never been admitted to the bar, and had in fact never completed law school; he was 'a layman masquerading as a lawyer.' " *Commonwealth* v. *Thomas*, 399 Mass. 165, 168 (1987), quoting from *People* v. *Felder*, 47 N.Y. 2d 287, 291 (1979). In such circumstances, ineffective assistance of counsel may be presumed. "It is now accepted that a person convicted of crime who has unknowingly been represented in the matter by an imposter — one pretending to be an attorney but in fact never licensed to practice anywhere — is entitled to have his or her conviction set aside, even though the representation was without a fault and as proficient as could be expected from the best of lawyers." *Commonwealth* v. *Thibeault*, 28 Mass. App. Ct. 787, 789 (1990). The *Thomas* decision, *supra*, suggests that serious questions regarding "moral character," as well as "conduct bearing on [the attorney's] capacity and competence," might invoke a per se response. *Commonwealth* v. *Thomas*, *supra* at 168.

The considerations are different where defense counsel is an attorney of apparently established training and competence who, for some other reason, is legally incapacitated from undertaking particular representation. Thus, suspension for failure to register with the board of bar overseers has been held not to require automatic reversal of a conviction. *Ibid.* Likewise, suspension from practice for conviction of the crime of receiving stolen property has not resulted in automatic reversal. See *Commonwealth* v. *Thibeault*, *supra* at 789-793 (which also includes

examples of unlawful or unethical behavior elsewhere, some of considerable dimension, that have not resulted in per se reversals). See also *Solina* v. *United States*, 709 F.2d 160, 167, 169 (2d Cir. 1983) (decision reversing conviction limited to "situations where, unbeknown to the defendant, his representative was not authorized to practice law in any [S]tate, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character").

We conclude that Cicilline's representation of the present defendant falls well within the category of cases not requiring automatic vacating of the conviction. Indeed, we have stated as much, albeit in dictum, in *Commonwealth* v. *Thibeault, supra* at 791-792 (no automatic reversal "where attorneys licensed in a given jurisdiction have without due authorization represented defendants in another jurisdiction"). There is no dispute that Cicilline was at the time a member in good standing of the Rhode Island bar. While his appearance in a Massachusetts court may be fodder for those interested in the unauthorized practice of law, it was not of a character that by itself requires relieving the defendant of an otherwise just conviction. *Id.* at 792.

3. *Ineffective assistance of counsel.* We turn, then, to the defendant's assertion that trial counsel provided constitutionally ineffective assistance apart from the fact that he was not a member of the Massachusetts bar. The defendant agrees that his claims of ineffective assistance of counsel can be resolved on the basis of the trial record without further hearing because "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 8 (2005), quoting from *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

We apply the criteria of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). In this regard, the defendant urges that, where trial counsel was not authorized to practice in Massachusetts, he is not entitled to the deference that we normally pay to counsel's strategic choices. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). We have been given no convincing reason why that should be so. We have decided (see section 2, *supra*) that the absence of qualification of a Rhode

Island attorney in Massachusetts did not by itself render him incapable of supplying effective legal assistance, and we are not persuaded that altered standards for determining what constitutes effective legal assistance should be applied on this record. Compare *Commonwealth* v. *Thibeault*, 28 Mass. App. Ct. at 793-794.

Addressing the defendant's specific accusations of ineffective assistance, we begin with his proposition that it was substandard performance, with substantial effect on the defendant, for counsel not to object to the testimony of Kimberly Melo, the defendant's sister, followed by the contradictory testimony of Trooper Bigelow. The argument comes in two phases: first, that the Commonwealth was permitted to call Kimberly Melo, in violation of the rule of *Commonwealth* v. *Benoit*, 32 Mass. App. Ct. 111 (1992), solely for the purpose of subsequently impeaching her testimony; and second, that the absence of an objection to Bigelow's testimony allowed Kimberly Melo's hearsay statements to be admitted for substantive purposes. We conclude that Kimberly Melo's testimony did not implicate the *Benoit* rule and that the lack of an objection to Bigelow's hearsay testimony was far removed from anything that could have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

It is accepted that the Commonwealth may not call a witness "who the Commonwealth knows beforehand will provide no probative testimony . . . solely for the purpose of impeachment by hearsay evidence." *Commonwealth* v. *Benoit, supra* at 114.[1] The principle has been endorsed by the Supreme Judicial Court. See *Commonwealth* v. *McAfee*, 430 Mass. 483, 489-490 (1999). The rule is designed to discourage manipulation of the right to offer hearsay for impeachment purposes by calling a witness with no meaningful testimony to give and impeaching her "in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence — or, if it didn't miss it, would ignore it." *Commonwealth* v. *Benoit, supra* at 115-116, quoting from *United States* v. *Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984).

---

[1]General Laws c. 233, § 23, permitting a party to impeach its own witness by evidence of prior inconsistent statements, is not to the contrary. That statute presupposes that the witness has first been called for a proper purpose.

Here, however, Kimberly Melo was called to testify that the vehicle in question belonged to her and that the defendant was her brother. That both propositions were of material assistance to the Commonwealth's case can hardly be disputed. They plainly buttressed the identification of the defendant by Trooper Manny, reducing a universe of possible suspects to a finite group with access to the automobile. The Commonwealth was not required to limit its evidence to indirect references to the vehicle's ownership when the owner herself was available to confirm it. In addition, based on the anticipated testimony of Trooper Bigelow, the prosecutor could reasonably assume that the witness would confirm that she had stated that her brother had been driving the car on the night in question. The Commonwealth was not required to trim its case because a pretrial filing by the defendant suggested that the witness might recant the statement. The *Benoit* rule applies where the Commonwealth knows its witness will provide nothing of value; a showing to that effect has not been made in this case.[2] Because an objection to Kimberly Melo's testimony should not have been sustained, it was not ineffective assistance for counsel not to have asserted it.

With Kimberly Melo having testified permissibly, the Commonwealth was entitled to introduce, for impeachment purposes, her statement to Bigelow that her brother, the defendant, was driving the car. The defendant faults his trial counsel both for not objecting to the admission of Bigelow's testifying as to Kimberly Melo's statement and for not requesting a limiting instruction that the statement could not be used by the jury as substantive evidence that the defendant was in fact driving the automobile. As we have indicated, the statement was admitted properly for impeachment purposes, and an objection would presumably have been overruled. Furthermore, any failure to request an instruction limiting the use of Kimberly Melo's out-of-court statement plainly posed no substantial risk of a miscarriage of justice. Once it became apparent that Kimberly Melo

[2]The defendant observes that Rhode Island has a somewhat different rule on the subject and speculates that counsel may have withheld objection assuming that the same principle applied in Massachusetts. Because our *Benoit* rule was not violated, any possible misunderstanding on the part of counsel is of no importance.

would testify that she had given her car on the night in question to Eric Fontaine, rather than to the defendant, it is obvious that the jury's focus would be on the credibility of that testimony and on whether it was sufficiently reliable to detract from Trooper Manny's identification. In weighing that credibility, the jury would be aware of Trooper Bigelow's conversation with Kimberly Melo whether that conversation was offered substantively or for impeachment. One way or the other, the jury would believe either Kimberly Melo or Bigelow. The absence of an instruction expressly limiting the use of Bigelow's testimony was of slight, if any, consequence.

The defendant argues separately that it was ineffective for trial counsel to fail to object to the judge's refusal to excuse two jurors who would not state unequivocally that they could be impartial. One juror stated that she had been married to an ex-detective on a narcotics squad, and did not feel she could be impartial for that reason. Eventually she responded, "I'll do my best," and the judge retained her in the venire. Because this juror was not subsequently called, the judge's finding that she was indifferent was academic. She did not participate in the trial, nor was the defendant required to exercise a peremptory challenge to remove her.

Another juror reported that he might know police officers involved in the case, and that he was also involved in a lengthy civil lawsuit that "may tend to skew my view of the system." He stated that he was "not certain" that he could be impartial. The defendant's counsel did not challenge either for cause or peremptorily, and the juror was seated and deliberated. "We afford a trial judge a large degree of discretion in the jury selection process." *Commonwealth* v. *Vann Long*, 419 Mass. 798, 803 (1995). Here, the juror expressed nothing that suggested prejudice either against the defendant personally or against a class of which he was a member, and it was not an abuse of the judge's broad discretion to conclude that the juror was indifferent.

The defendant, however, does not so much question the determination of the judge as he attacks the failure of his trial counsel to challenge the juror. On a motion for new trial, the defendant has the burden of presenting a record that will enable

a reviewing court to evaluate the merit of his claim. Here, we do not know, by affidavit or otherwise, what counsel's reasoning on the subject may have been. A skeptical juror, one dissatisfied with the judicial system, may well, as the Commonwealth suggests, have been to his liking in a criminal case. Nor do we even know whether, when this juror was seated, the defendant retained any peremptory challenges. If he did, his counsel's choice not to challenge is a strategic decision that does not lend itself easily to review, particularly where there is no indication that the defendant expressed any disagreement at the time. If the defendant's peremptory challenges were exhausted, counsel's only recourse was to a challenge for cause which, as we have stated, the judge permissibly could have rejected. No ineffective assistance on the subject of juror selection has been demonstrated.

The defendant's final effort to show that he has been deprived of the effective assistance of counsel focuses on his trial attorney's strategic decision to offer alternative defenses: specifically, that the defendant had been misidentified; and that, if it were he in the vehicle, he did not have control of the narcotics. We see nothing in the record before us that suggests that the common practice of offering alternative defenses as a means of inducing reasonable doubt within the jury was "manifestly unreasonable" in this case. See *Commonwealth* v. *Myers*, 51 Mass. App. Ct. 627, 632 (2001).

4. *Jury instructions.* Finally, the defendant takes issue with a portion of the jury instructions devoted to the subject of identification, and particularly with the judge's statement: "Are you the jury satisfied that the identification made by the witness in this case, *the trooper who first stopped the defendant*, was the product of his own recollection?" (Emphasis supplied.) The defendant correctly identifies the flaw that the statement assumes the conclusion that the individual who left the vehicle on the night in question was in fact the defendant, when that disputed identification is at the heart of the case. There was no objection at trial, and we accordingly review to determine whether the reference created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

We considered a similar problem in *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106, 109-111 (1984), wherein a then recommended jury instruction on identification referred to the *next* opportunity of the witness to see the defendant, implying, as in the present case, that it was in fact the defendant who had been observed before. This formulation was subsequently abandoned and was replaced by a proposed instruction that counseled the jury that they must be satisfied with the identification made "subsequent to the offense." See Massachusetts Superior Court Criminal Practice Jury Instructions § 4.3 (1999 & Supp. 2003). It has been held, however, that use of the "next opportunity" language would not by itself create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 558 (1998).

That controls here. We see no appreciable difference between a reference to the "next opportunity" to see the defendant and the statement of the judge in the present case that referred to the trooper "who first stopped" the defendant. The instructions taken as a whole were correct. In a legal system that values the jury as accurate finders of fact, we ought to acknowledge that the jury members bring to the process at least some level of common sense. There could have been no doubt in the jurors' minds that the case involved an identification dispute, and the judge's slip of the tongue could not have misled.

*Order denying motion for new*
*trial affirmed.*