**Supreme Court**

No. 2015-120-Appeal.
(PM 14-2065)

Robert Dominick            :

v.            :

State of Rhode Island.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Robert Dominick            :

v.               :

State of Rhode Island.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The applicant, Robert Dominick, appeals from the denial of his application for postconviction relief.[1] The applicant maintains that the hearing justice erred by denying his application and in finding that he failed to present newly discovered evidence that would have entitled him to a new trial. This case came before the Supreme Court sitting at Smithfield High School pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] We note that subsequent to the notice of appeal in this matter, G.L. 1956 § 10-9.1-9 was amended by P.L. 2015, ch. 92, § 1 to require an aggrieved party to seek review of a final judgment on an application for postconviction relief by filing a petition for writ of certiorari with this Court.

# I

## Facts and Procedural History

The underlying facts in this case are set out in <u>State v. Dominick</u>, 968 A.2d 279 (R.I. 2009), in which this Court affirmed applicant's conviction of assault and battery upon Glennis Beltram, a person over sixty years of age, in violation of G.L. 1956 § 11-5-10.[2] On May 30, 2006, Beltram was mowing her lawn near applicant's property when a physical altercation erupted between the two next-door neighbors. Beltram's account of the incident—and testimony in the underlying criminal trial—was that she was mowing her lawn when applicant approached her and told her to get off his property. She testified that she communicated to applicant that she was on her own property and on property owned by the state. Beltram testified that applicant then shoved her against a granite marker pole located on her property, causing scrapes to her right arm. She testified that she responded by spitting on applicant's face and that, once again, applicant pushed her—this time "with all his force"—causing more injury to her right arm. She also claimed that, during their altercation that day, the lawn mower she had been using was damaged on the left side.

Beltram testified that after the altercation she entered her home, told her husband about the incident, and called 911.[3] Although Beltram did not choose to press charges when the police arrived at her home that day, she went to the Glocester Police Department that evening and filed

---

[2] General Laws 1956 § 11-5-10 provides that "[a]ny person who shall commit an assault and battery upon a person sixty (60) years of age or older, causing bodily injury, shall be deemed to have committed a felony and shall be imprisoned not exceeding five (5) years, or fined not exceeding one thousand dollars ($1,000), or both."

[3] The applicant's account of the incident was significantly different. He claimed that Beltram was trespassing on his property and that, when asked to leave his property, she cornered him with the lawn mower. He testified that, after she spat on his face, he held the lawn mower in an attempt to protect himself and that after losing his balance, he leaned against Beltram, causing her to come into contact with the marker pole. His defense was that any injury caused to Beltram was either an accident or an act of self-defense.

a formal complaint. Beltram also provided a statement to the Glocester Police Department summarizing her account of the incident. This statement included her allegation that the lawn mower was damaged during the incident. As part of their investigation, the Glocester Police Department also acquired a statement from David Lohr, a witness who arrived at the scene during or shortly after the incident. At that time, when Lohr was asked if he had seen "any physical altercation take place between [Beltram and applicant]," he indicated that he "[did not] recall for sure."

On August 8, 2006, the state filed a criminal information charging applicant with assault and battery upon Beltram. Attached to the criminal information were the statements made by Beltram and Lohr.[4] On February 22, 2007, the case proceeded to trial and, on the following day, the jury returned a guilty verdict. The applicant was sentenced to five years suspended, with probation,[5] fined $1,000, and ordered to complete 700 hours of community service. The applicant then directly appealed his conviction to this Court, and his conviction was affirmed. Dominick, 968 A.2d at 285.

Following this Court's decision in Dominick, Beltram filed a civil claim against applicant for the assault and battery (PM 09-2637).[6] During pretrial discovery in the civil case, Beltram produced a photograph of the lawn mower involved in the incident. She testified at deposition that she had disposed of the lawn mower after the incident, but that, before doing so, she had

---

[4] Statements made by several officers involved in the investigation were also attached to the criminal information, as well as Beltram's medical record and photographs of her injuries.

[5] The applicant had originally been sentenced to sixty months with seven months to serve (pending eligibility for home confinement) and fifty-three months suspended, with probation; however, upon motion by applicant, his sentence was modified to sixty months suspended, with probation.

[6] Because the issue of whether an assault and battery had occurred had already been decided by a jury in the criminal trial, the jury's task in the civil trial was to determine what, if any, damages it should award to Beltram and to consider applicant's counterclaims. See G.L. 1956 § 9-1-2.

taken the photograph. She explained that the damage caused to the lawn mower as a result of the altercation was to the "left side" but acknowledged that it was not visible in the photograph.[7] Also during the civil action, applicant called Lohr as a witness. At deposition and at the civil trial, Lohr maintained that he had not witnessed any physical contact between Beltram and applicant, but he also characterized his initial witness statement as "probably the most accurate of what happened," given that four years had since passed. At the close of the civil trial, the jury awarded Beltram $100 in damages, and $300 in punitive damages.

On April 8, 2014, applicant filed an application for postconviction relief pursuant to G.L. 1956 § 10-9.1-1, based on the evidence offered at the civil trial that had not been presented in applicant's criminal trial, which he claimed was exculpatory.[8] On December 22, 2014, a hearing was held on his application. During the hearing and in his filings before the Superior Court, applicant relied on two items he described as "newly discovered"—(1) the picture of the lawn mower, coupled with the information that Beltram had disposed of the lawn mower, and (2) Lohr's testimony. The applicant claimed that during the civil trial he learned for the first time that Beltram had destroyed the lawn mower involved in their altercation but that she had kept a photograph of the lawn mower. He claimed that the photograph could have been used to impeach Beltram's testimony at the criminal trial that the lawn mower had been damaged as a result of applicant's conduct because the photograph did not depict any damage to the lawn

---

[7] It is undisputed that this photograph had never been presented to the Glocester Police Department or to the state during the criminal trial.

[8] Section 10-9.1-1(a), in pertinent part, provides that:

> "Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims * * * [t]hat the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state * * * may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

mower. Additionally, applicant argued that Lohr's testimony could also have impeached Beltram's testimony, because he learned for the first time during the civil trial that Lohr had not seen any physical contact between Beltram and applicant despite being present at the scene. He maintained that this constituted newly discovered evidence entitling him to a new trial because Lohr's previous statement attached to the criminal information indicated that Lohr was not sure what he saw that day, rather than that he had not seen any physical contact.

On December 29, 2014, judgment was entered denying applicant's application for postconviction relief. In a written decision, the hearing justice, who had also presided over the criminal trial, found that the evidence applicant sought to label as "new" had in fact been available to applicant during his criminal trial. Specifically relating to the lawn mower, the hearing justice held that no responsibility for its loss and/or destruction could have been imputed to the state simply because Beltram decided "on her own, to take [the lawn mower] to a junk yard." The hearing justice noted that Beltram was not a party to the criminal case and applicant "never asked to inspect the [lawn] mower" before or during his criminal trial. Moreover, the hearing justice characterized applicant's "excitement over the missing lawn mower" as "mystifying," given that the only issue for the jury to decide had been whether applicant assaulted Beltram—not whether the lawn mower had been damaged during their altercation. Furthermore, the hearing justice remarked that applicant's "newly-found regret" for not having presented Lohr as a witness in his criminal trial "scarcely qualifie[d] as newly-found evidence." Additionally, the hearing justice held that, "when juxtaposed to [applicant's] own seriously flawed criminal trial testimony, his fresh offerings [were], at best, only marginally of value," as he found applicant's credibility "significantly lacking." The hearing justice also concluded that the new evidence applicant relied on in his application would not have "in any way alter[ed] the

verdict if another trial were ceded to him." Accordingly, the hearing justice denied applicant's application for postconviction relief. Following the Superior Court's decision and entry of final judgment, applicant filed a timely notice of appeal.

## II

## Standard of Review

"This Court has previously stated that we 'will not disturb a trial justice's factual findings made on an application for post[]conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings.'" Bell v. State, 71 A.3d 458, 460 (R.I. 2013) (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)). We will, nonetheless, "review de novo any post[]conviction[-]relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." Id. (quoting Chapdelaine, 32 A.3d at 941).

## III

## Discussion

"[P]ost[]conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." Chapdelaine, 32 A.3d at 941 (quoting Gordon v. State, 18 A.3d 467, 473 (R.I. 2011)). "A postconviction-relief proceeding is civil in nature, and the burden of proof lies with the applicant to show by a preponderance of the evidence that relief should be granted." D'Alessio v. State, 101 A.3d 1270, 1275 (R.I. 2014). "In applications for postconviction relief based on newly discovered evidence, we use the same standard of review as in a motion for [a] new trial based on newly discovered evidence." Id. In order for new evidence to warrant postconviction relief, it must first "be (1) newly discovered and not available at the time of trial; (2) it must not have been discoverable by due diligence; (3) it must be material, not simply

- 6 -

cumulative or impeaching; and (4) it must be of the type that would likely change the verdict at trial." Id. "For a defendant to satisfy his burden of showing that information could not have previously been discovered through a diligent search, we have ordinarily required the defendant to show that he made a reasonable investigation of evidence which was available to him prior to trial." State v. Quaweay, 89 A.3d 823, 828 (R.I. 2014). "If the evidence meets the four-part threshold prong, it then must meet the second prong, which is an assessment of whether it is 'credible enough to warrant relief.'" D'Alessio, 101 A.3d at 1275 (quoting Ferrell v. Wall, 889 A.2d 177, 184 (R.I. 2005)).

**A**

**Evidence of the Lawn Mower**

On appeal, applicant argues that the hearing justice erred in rejecting his claim that the photograph of the lawn mower and knowledge that Beltram disposed of the lawn mower constituted newly discovered evidence. The applicant contends that, because the "sole issue for the jury in the criminal case was whether the contact was defensive or accidental, or whether [applicant] intentionally pushed * * * Beltram into the post with the intent of injuring her," he needed any evidence that would contradict Beltram's version of the incident. Because, in applicant's opinion, the photograph of the lawn mower depicted no damage, applicant claims he could have used the photograph to impeach Beltram's testimony in the criminal trial that the lawn mower was damaged as a result of their altercation.

We are of the opinion that the photograph of the lawn mower and the information regarding Beltram's disposal of the lawn mower do not constitute newly discovered evidence for several reasons. First, this evidence was available at the time of the criminal trial, yet applicant completely failed to explore the issue of the lawn mower's condition and whereabouts.

Beltram's statement to the police, which was attached to the criminal information, included her allegation that the lawn mower had been damaged during the altercation. Consequently, applicant was placed on notice—well before Beltram's trial testimony—that she was claiming damage to the lawn mower. Nevertheless, applicant did not even attempt to discover any information regarding the lawn mower. Therefore, he cannot now establish that this evidence could not have been discoverable by due diligence, because he failed to "ma[k]e a reasonable investigation of evidence which was available to him prior to trial." See Quaweay, 89 A.3d at 828, 829, 830 (holding that the defendant was not entitled to a new trial based on newly discovered evidence where "a careful reader who made a reasonable effort to follow up on [a witness statement to the police] could have unearthed all of the information which [the] defendant claim[ed] [was] newly discovered"). Additionally, at the criminal trial, applicant could have cross-examined Beltram concerning the lawn mower but, again, failed to explore the issue. See id. at 829. He cannot now rely on evidence he failed to develop by labeling it "new."

Moreover, it is well established that, in order for new evidence to warrant postconviction relief, the evidence "must be material, not simply * * * impeaching." D'Alessio, 101 A.3d at 1275. "Impeaching evidence * * * is 'information that is not related to [the] defendant's guilt or innocence and serves only to destroy the credibility of the [witness].'" Id. at 1276 (quoting Bleau v. Wall, 808 A.2d 637, 644 (R.I. 2002)). Even if applicant could meet his burden of establishing that with the exercise of due diligence the evidence relating to the lawn mower would not have come to light—which he cannot—this evidence would have served the sole purpose of impeaching Beltram's testimony. See id. The applicant does not argue that this evidence would serve any purpose other than to cast doubt on Beltram's criminal trial testimony. Furthermore,

the hearing justice concluded that any impeachment value the evidence could have had would not have changed the verdict at trial.

The hearing justice's finding that the evidence relating to the lawn mower was not newly discovered and did not entitle applicant to postconviction relief is well supported by the record and not clearly erroneous. Accordingly, we decline to disturb his finding.

**B**

**Lohr's Testimony**

The applicant also argues that the hearing justice erred in rejecting his claim that Lohr's testimony was "newly discovered." He claims that, although there appeared to be no reason to call Lohr as a witness at the criminal trial, Lohr's civil trial testimony was far more telling and could have impeached Beltram's version of events and bolstered the defense. The applicant argues that Lohr's civil testimony was definitive—he had an unobstructed view of Beltram and applicant for a minute or two and had not observed any physical contact between them. Although applicant concedes that Lohr's identity and his statement to the police had been disclosed in the criminal case, he claims that it was Lohr's testimony in the civil case that constitutes new evidence and entitles him to a new trial.

Similar to the evidence relating to the lawn mower, Lohr was available at the time of the criminal trial, and his testimony could have been discovered and explored prior to the criminal trial with the exercise of due diligence. See Quaweay, 89 A.3d at 828, 829. It is undisputed that Lohr's identity and witness statement were disclosed in the criminal information. Remarkably, the applicant conceded that he did not even attempt to contact Lohr during the criminal case. Accordingly, Lohr's testimony cannot now serve as the basis for postconviction relief because the applicant had every opportunity to develop such information in a pretrial interview but failed

to do so. See State v. Hernandez, 641 A.2d 62, 72, 73 (R.I. 1994) (defense counsel's failure to interview a known witness prior to trial meant that defense counsel did not use due diligence to obtain evidence from the witness before trial and, therefore, the evidence could not qualify as newly discovered). It is our opinion that the hearing justice was not clearly wrong, nor did he overlook or misconceive material evidence in finding that Lohr's testimony was not newly discovered and did not entitle the applicant to postconviction relief. Accordingly, we, once again, see no reason to disturb his finding.[9]

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

---

[9] The applicant also made several broad constitutional arguments to this Court in his prebriefing statement, including that "[b]y disposing of the lawn mower, * * * Beltram effectively deprived him of the ability to make use of his compulsory process as guaranteed by" both the United States and the Rhode Island Constitutions and of his ability to "present exculpatory evidence." He also claimed that her destruction of the lawn mower was "a deprivation of due process warranting dismissal of the criminal charges * * *." It is well established that this Court generally "consider[s] an issue to be waived when a party '[s]imply stat[es] an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues * * *.'" Bucci v. Hurd Buick Pontiac GMC Truck, LLC, 85 A.3d 1160, 1170 (R.I. 2014) (quoting State v. Chase, 9 A.3d 1248, 1256 (R.I. 2010)). Accordingly, applicant's constitutional arguments are not properly before this Court. In any event, his arguments lack merit. It is undisputed that the state did not have information regarding the lawn mower in the form of any picture and/or knowledge of the destruction of the lawn mower. Therefore, applicant cannot impute any knowledge of the lawn mower's condition or whereabouts from Beltram to the state. Additionally, applicant failed to establish that the evidence he seeks to present was exculpatory in any way. As applicant himself fails to contest, the evidence he relied upon in his application for postconviction relief would serve, at best, to impeach Beltram's testimony regarding the altercation. Accordingly, there is nothing to suggest, nor does applicant fully articulate, how any evidence would exculpate him of the charge of assault and battery.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Robert Dominick v. State of Rhode Island.

**CASE NO:** No. 2015-120-Appeal.
(PM 14-2065)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 16, 2016

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

For Applicant:  Thomas M. Dickinson, Esq.

For State: Lauren S. Zurier
Department of Attorney General