May 17, 2018

**Supreme Court**

No. 2015-330-M.P.
(PM 14-359)

Kevin M. Millette          :

v.          :

State of Rhode Island.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kevin M. Millette        :

v.        :

State of Rhode Island.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  Claiming that his defense counsel, who was not licensed to practice law in Rhode Island, was engaging in unlawful conduct, Kevin Millette (Millette or applicant) argues that he was denied his constitutional right to counsel when he pled nolo contendere to two criminal offenses and admitted to violating his probationary sentence. Millette further maintains that his defense counsel's associate, who was licensed in Rhode Island and who appeared in court with Millette, was merely a "straw man" and thus complicit in the scheme to practice law without a license.  We issued a writ of certiorari to review the Superior Court's denial of Millette's application for postconviction relief in this case of first impression. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On July 29, 2009, Millette was charged with obtaining money from Jeffrey Jillson under false pretenses with the intent to cheat or defraud Jillson (count 1) and intentionally appropriating Jillson's money (count 2) (the Jillson matter).  Millette was also presented as an alleged violator of a probationary sentence he had received upon his prior conviction for the charge of obtaining money under false pretenses from Leo David.  Millette failed to appear at

court, and a warrant was issued. He was subsequently arrested out of state and arraigned on January 25, 2012. On April 10, 2012, Millette was charged in another criminal action with obtaining property from James Singleton under false pretenses with the intent to cheat or defraud Singleton (count 1) and intentionally appropriating Singleton's property (count 2) (the Singleton matter).

On July 31, 2012, Millette pled nolo contendere to count 2 of the Jillson matter and to count 2 of the Singleton matter, and admitted to violating the terms of his probationary sentence.[1] Prior to accepting the pleas, the trial justice asked Millette if he had signed the plea affidavits, if he had read them and understood them, and if he had the opportunity to discuss them with his attorney before signing them—to all of which Millette responded in the affirmative. The trial justice further inquired whether Millette understood that he was giving up various rights by entering his pleas, and he again responded affirmatively. The trial justice was satisfied that Millette entered his nolo contendere pleas "knowingly and voluntarily with a full understanding of the nature and consequences of his plea and corresponding waiver of his constitutional rights[,]" and accordingly the trial justice accepted the pleas. With respect to the Jillson matter, Millette was sentenced to twenty years in prison, with twelve years to serve and eight years suspended with probation; and, for the Singleton matter, Millette received a twenty-year suspended sentence with probation, to run consecutive to the first sentence.

On December 16, 2013, Millette filed a *pro se* application for postconviction relief in the Superior Court. In support of his application, Millette maintained, in pertinent part, that he had

---

[1] In consideration of Millette's pleas, the state dismissed the remaining counts in both matters pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

received ineffective assistance of counsel because his lawyer, Samuel Lovett (Lovett), of the law firm Lovett & Lovett, was not licensed to practice law in Rhode Island.[2]

On August 3, 2015, the same justice who presided over the 2012 plea proceedings held a hearing on Millette's application for postconviction relief. Millette stated that he first became a client of Lovett & Lovett in approximately 2002 or 2003, when he sought legal advice concerning a real estate transaction. He maintained that Lovett represented him in the real estate transaction. Millette testified that he again contacted Lovett & Lovett in 2004 because someone was going to press charges against him for obtaining money under false pretenses. When asked whether Lovett's ability to represent him in Rhode Island came up in their conversations, Millette replied in the negative.

Millette then discussed the Jillson matter. Millette testified that a letter from an attorney who represented Jillson prompted him to contact Lovett, who assured him that he would resolve the matter and negotiate the dispute. Millette also testified about the involvement of John Sylvia (Sylvia), an attorney at Lovett & Lovett who was licensed to practice law in Rhode Island. With respect to the Jillson matter, Millette said that he met Sylvia at the Lovett & Lovett office, and that Sylvia told him that he would handle his arraignment because Lovett had to be in Massachusetts for another case. Millette testified that, following his arraignment, he spoke with Sylvia only once or twice, but that he had frequent contact with Lovett.

On cross-examination, the state elicited the fact that Millette's 2012 pleas were not his first pleas in a criminal case. In 1999, Millette had entered pleas in three separate criminal cases

---

[2] In his postconviction-relief application, Millette raised various other arguments in support of his claim of ineffective assistance of counsel, including that Lovett gave him bad advice and that Lovett & Lovett had a conflict of interest because it had a relationship with the Providence Bruins hockey team and Jillson had played for that team. However, Millette did not address these arguments at the postconviction-relief hearing or press them on appeal.

- 3 -

and was represented by different counsel. Millette had also previously entered a plea in federal court and was represented by counsel other than Lovett. Additionally, Millette had entered a plea in Kent County Superior Court in 2004 and was represented by Sylvia.

With respect to his 2012 pleas, Millette testified that he met with Lovett, Sylvia, and other attorneys the day before he entered his pleas, and Lovett advised him to take the plea deal. The state asked Millette whether Sylvia met with him in court and if Sylvia had informed him of the state's plea offer, to which Millette gave an affirmative reply. Millette and Sylvia discussed the state's offer and Sylvia made a counteroffer, according to Millette. He testified that, after continued negotiations, Sylvia and the state agreed upon a disposition that resolved the pending criminal matters. Millette testified that Sylvia then "went through" the plea form with him.

Sylvia testified next. When asked whether he was aware that Lovett was not licensed to practice law in Rhode Island, he replied in the affirmative. Sylvia testified that he told Millette that he would represent him in the matter, and he stated that Millette "knew [he] was the Rhode Island attorney from the office." Regarding Millette's 2012 pleas, Sylvia testified that he discussed with Millette the rights that he was waiving by pleading nolo contendere, and said that he "put a checkmark next to each of the rights as [he] explained them * * *." Additionally, on the plea form, which was entered as a full exhibit, Sylvia's signature appears in the signature box entitled "WITNESS (Attorney for the Defendant)[.]"

The trial justice then rendered his decision on Millette's application for postconviction relief. With respect to Millette's 2012 pleas, he determined there was "nothing whatsoever irregular about the proceedings." He found that Millette was aware of the charges against him and the consequences of his pleas when he pled nolo contendere. Further, the trial justice determined that Sylvia, not Lovett, represented Millette in regard to his 2012 pleas, and that there

was no evidence that Sylvia's representation of Millette was ineffective. The trial justice concluded that Millette's 2012 pleas were not invalidated by the fact that Lovett was not licensed to practice law in Rhode Island.

The trial justice entered judgment in favor of the state on September 3, 2015. On October 23, 2015, Millette petitioned this Court for the issuance of a writ of certiorari, seeking review of the denial of his application for postconviction relief. This Court issued a writ of certiorari on June 14, 2016.

## II

### Standard of Review

"This Court has previously stated that we will not disturb a trial justice's factual findings made on an application for post[]conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Dominick v. State*, 139 A.3d 426, 431 (R.I. 2016) (quoting *Bell v. State*, 71 A.3d 458, 460 (R.I. 2013)). However, this Court will "review *de novo* any post[]conviction[-]relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.* (quoting *Bell*, 71 A.3d at 460). "We have previously noted that 'applicants seeking postconviction relief due to ineffective assistance of counsel are saddled with a heavy burden, in that there exists a strong presumption [recognized by this Court] that an attorney's performance falls within the range of reasonable professional assistance and sound strategy * * *.'" *Lipscomb v. State*, 144 A.3d 299, 308 (R.I. 2016) (quoting *Bell*, 71 A.3d at 461).

**III**

**Discussion**

Millette maintains that he was denied his constitutional right to the assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution.[3]  Specifically, he asserts that he received per se ineffective assistance of counsel because Lovett was not licensed to practice law in Rhode Island. Additionally, Millette asserts that "Lovett had a conflict of interest for a myriad of reasons, not the least of which was his personal relationship and dealings with the parties."  He avers that Lovett and Sylvia had a conflict of interest because "[a] vigorous defense would have exposed Lovett's scheme and Sylvia's cover up" and that, therefore, "Sylvia also needed to dispose of these matters quickly and quietly in order to maintain the status quo and avoid any inquiry by the Court, the State, the Unauthorized Practice of Law Committee, the Disciplinary Board, and Mr. Millette."

**A**

**Per Se Ineffective Assistance of Counsel**

"It is well established that, in this jurisdiction, ineffective-assistance-of-counsel claims are assessed under the familiar two-pronged test announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Reyes v. State*, 141 A.3d 644, 654 (R.I. 2016).  Under the test set forth in *Strickland*, an applicant for postconviction relief must first establish that "counsel's performance was constitutionally

---

[3] The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."  Article 1, section 10 of the Rhode Island Constitution provides, in relevant part: "In all criminal prosecutions, accused persons shall enjoy the right * * * to have the assistance of counsel in their defense * * *."

deficient" by demonstrating "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed * * * by the Sixth Amendment." *Id.* (quoting *Bido v. State*, 56 A.3d 104, 110-11 (R.I. 2012)). Second, the applicant must demonstrate that he or she was prejudiced by counsel's performance by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 655 (quoting *Strickland*, 466 U.S. at 694).

Here, however, we need not analyze Millette's claim of ineffective assistance of counsel under the *Strickland* test because he has not raised any arguments before this Court that the performance by Sylvia or Lovett was constitutionally deficient. Rather, Millette has conceded that there is "no question of competency here." Millette instead claims that he received per se ineffective assistance of counsel because Lovett was not licensed to practice law in Rhode Island due to his failure to pass the Rhode Island bar examination.

Although Lovett was not licensed to practice law in Rhode Island, the application of a rule of per se ineffective assistance of counsel would be misplaced here because the trial justice found that Millette was represented by Sylvia, who was licensed to practice law in Rhode Island, a finding that we will not disturb unless we conclude that it is clearly erroneous or that the trial justice overlooked or misconceived material evidence in reaching it. *Dominick*, 139 A.3d at 431. We perceive no such error. At the postconviction-relief hearing, the trial justice heard testimony from Millette and Sylvia that elicited the following pertinent facts regarding representation of Millette with respect to his 2012 pleas. Sylvia testified that Millette was aware that Sylvia was Lovett & Lovett's "Rhode Island attorney," and that he told Millette that he would represent him in the criminal matters against him. On September 8, 2009, Sylvia entered his appearance on Millette's behalf. Sylvia met with Millette in court prior to Millette entering his 2012 pleas, and

Sylvia informed Millette of the state's plea offer. Sylvia discussed the state's offer with Millette, continued negotiations with the state, and ultimately reached a resolution that disposed of the pending criminal matters. Sylvia then "went through" the plea form with Millette and discussed with him the rights that he was giving up by pleading nolo contendere. Additionally, on the plea form, Sylvia's signature appears in the signature box entitled "WITNESS (Attorney for the Defendant)[.]" Based on the evidence adduced at the postconviction-relief hearing, we are of the opinion that the trial justice did not err in finding that Sylvia, not Lovett, represented Millette in the criminal matters that are the subject of Millette's postconviction-relief application.

Nevertheless, even if Lovett did represent Millette, his argument of per se ineffective assistance of counsel lacks merit. Millette cites to *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983), in which the Second Circuit Court of Appeals applied a rule of per se ineffective assistance of counsel where the defendant was represented by someone who was not admitted to practice law in any state. *Solina*, 709 F.2d at 161, 168. However, "[a]lthough the Second Circuit and several other circuits apply a *per se* rule in some cases, they do not apply it to lawyers who are properly credentialed in another court." *United States v. Maria-Martinez*, 143 F.3d 914, 917 (5th Cir. 1998). As the Second Circuit has explained, "[t]he *per se* ineffectiveness rule is limited to situations 'where, unbeknown to the defendant, his representative was not authorized to practice law in any state * * *.'" *Elfgeeh v. United States*, 681 F.3d 89, 92 (2d Cir. 2012) (quoting *Solina*, 709 F.2d at 167).

Other courts that have adopted the rule of per se ineffective assistance of counsel have similarly limited it to situations where the defendant's attorney was not licensed to practice law in any state. *See*, *e.g.*, *United States v. Bergman*, 599 F.3d 1142, 1148 (10th Cir. 2010) ("We agree with the reasoning of the Second Circuit and adopt a *narrow* per se rule of ineffectiveness

where a defendant is, unbeknownst to him, represented by someone who has not been admitted to any bar * * *."); *United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) ("We decline * * * to extend the *per se* ineffectiveness rule beyond cases in which a defendant is represented by a person never properly admitted to any bar."); *Commonwealth v. Thibeault*, 556 N.E.2d 403, 405 (Mass. App. Ct. 1990) ("It is now accepted that a person convicted of crime who has unknowingly been represented in the matter by an imposter—one pretending to be an attorney but in fact never licensed to practice anywhere—is entitled to have his or her conviction set aside * * *."); *State v. Jorbin*, 728 P.2d 1246, 1246, 1247 (Ariz. Ct. App. 1986) (rejecting the defendant's argument that his representation was per se ineffective where the defendant's attorney was not a member of the Arizona bar, but was admitted to practice in Colorado); *People v. Van Pelt*, 311 N.E.2d 184, 186 (Ill. App. Ct. 1974) (holding that "a defendant is not denied effective assistance of counsel merely because his attorney was not licensed to practice in Illinois").

A case from our neighboring state, *Commonwealth v. Melo*, 851 N.E.2d 1124 (Mass. App. Ct. 2006), bears a close resemblance to the instant matter. In *Melo*, the Massachusetts Appeals Court was tasked with determining whether the defendant received per se ineffective assistance of counsel because the attorney who represented him was licensed to practice law in Rhode Island, but not in Massachusetts. *Melo*, 851 N.E.2d at 1128. The court rejected the defendant's argument that his representation was per se ineffective, and concluded that the attorney's "representation of the * * * defendant [fell] well within the category of cases not requiring automatic vacating of the conviction." *Id.* at 1129. The court went further, holding that "[w]hile [the attorney's] appearance in a Massachusetts court may be fodder for those interested in the unauthorized practice of law, it was not of a character that by itself requires relieving the

defendant of an otherwise just conviction." *Id.* Guided by the above-referenced jurisprudence, we decline to apply a rule of per se ineffective assistance of counsel in the case under review, because, although Lovett was not licensed to practice law in Rhode Island, he was duly licensed in Massachusetts.[4]

## B

### Conflict of Interest

Millette also contends that he received ineffective assistance of counsel on the ground that Lovett and Sylvia had a conflict of interest in representing him. "[I]n order to demonstrate a violation of his [or her] Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his [or her] lawyer's performance." *Rivera v. State*, 58 A.3d 171, 180 (R.I. 2013) (quoting *State v. Pineda*, 13 A.3d 623, 636 (R.I. 2011) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980))). "Under *Cuyler v. Sullivan*, * * * the Court explained that the mere 'possibility' of a conflict of interest is not enough to impugn a criminal conviction under the Sixth Amendment and rejected the contention that a criminal defendant is entitled to a reversal of his or her conviction whenever he or she makes 'some showing of a possible conflict of interest or prejudice, however remote * * *.'" *Simpson v. State*, 769 A.2d 1257, 1266-67 (R.I. 2001) (quoting *Cuyler*, 446 U.S. at 340).

Millette sets forth many grounds in support of his conflict-of-interest argument. He maintains that Lovett had a conflict of interest due to "a myriad of reasons," one of which is that Lovett had a personal relationship with Jillson. He also asserts that there was a conflict of interest to the extent that his case was not zealously defended due to fear that Lovett's lack of

---

[4] We note that Samuel Lovett and Carl J.S. Lovett were the subjects of an investigation by the Rhode Island Unauthorized Practice of Law Committee. The committee issued a report dated April 15, 2015, which was adopted by this Court in an order entered on June 19, 2015. *In re Lovett*, 117 A.3d 417, 418 (R.I. 2015) (mem.).

licensure in Rhode Island and Sylvia's "cover-up" would be exposed in court. We consider these issues waived, however, because Millette did not advance the conflict-of-interest issue at the postconviction-relief hearing or develop it further on appeal before this Court. *See Dominick*, 139 A.3d at 433 n.9 ("It is well established that this Court generally 'consider[s] an issue to be waived when a party [s]imply stat[es] an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues * * *.'") (quoting *Bucci v. Hurd Buick Pontiac GMC Truck, LLC*, 85 A.3d 1160, 1170 (R.I. 2014)).

In any event, Millette's conflict-of-interest argument lacks merit. We first note that Millette's assertion of a conflict of interest premised on Lovett's lack of licensure in Rhode Island is not a separate and discrete argument, but rather is embedded within his request for application of the rule of per se ineffective assistance of counsel. Specifically, concern of a conflict of interest is one of the rationales behind application of the rule of per se ineffective assistance of counsel in cases where a defendant is represented by someone not licensed to practice law, "because of what it tends to prevent the [']attorney['] from doing." *Solina*, 709 F.2d at 164 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978)); *see Elfgeeh*, 681 F.3d at 92 (summarizing the two rationales behind the per se ineffective assistance of counsel rule and noting that "[t]he second rationale is based on notions of conflict of interest, and applies in cases * * * where the lawyer is not duly licensed" because "the defense is necessarily compromised * * * "); *Maria-Martinez*, 143 F.3d at 916-17 (noting that one of the considerations underlying the per se rule of ineffective assistance of counsel is that "an undisclosed lack of credentials may create a conflict of interest").

However, although courts have recognized that "an undisclosed lack of credentials may create a conflict of interest" by "provid[ing] an incentive for lackluster representation," *Maria-*

*Martinez*, 143 F.3d at 916, this concern is inapplicable where the defendant has a licensed attorney of record. *See Elfgeeh*, 681 F.3d at 93 (concluding that there is "no basis for applying a *per se* ineffectiveness rule where * * * the defendant has a licensed attorney of record who signs all relevant papers and makes all relevant court appearances"). Consequently, because Millette was represented by a licensed Rhode Island attorney, Sylvia, Lovett's lack of a license to practice law in Rhode Island does not create a conflict of interest. Additionally, having concluded that the trial justice properly found that Sylvia, not Lovett, represented Millette with respect to his 2012 pleas, Millette's remaining conflict-of-interest arguments with respect to Lovett are flawed. Any purported relationship that Lovett had with Jillson is immaterial, because Lovett did not represent Millette.

With respect to Millette's conjecture that Sylvia had a conflict of interest because "he was complicit in several of Lovett's misdeeds," Millette has not put forth any evidence demonstrating that Sylvia had an actual conflict of interest. "A defendant cannot prevail on an allegation of ineffective assistance of counsel merely by showing that his attorney had a potential conflict of interest during the representation." *Rivera*, 58 A.3d at 180. Here, in rendering his ruling on Millette's application for postconviction relief, the trial justice stated that he "observed nothing whatsoever irregular about the proceedings[,]" and that there was no evidence before him that "would undermine the voluntary nature of the pleas that were entered in July of 2012." He further found that "there's absolutely zero evidence that Mr. Sylvia's representation was ineffective or that his actions as Mr. Millette's attorney in connection with the plea proceedings didn't meet the standard of care for a criminal lawyer representing a client in connection with the handling of a criminal case."

We are of the opinion that the trial justice's findings and conclusions are well supported by the record. Whatever incentive Lovett may have had to hide from the courts his malfeasance in practicing law in Rhode Island without a license, Millette has utterly failed to present evidence that demonstrated that Sylvia was harried by similar concerns. Indeed, one would have to leap a rather large inferential chasm to conclude that Sylvia would be willing to jeopardize his own law license and reputation to protect Lovett's unlawful activities. The paucity of evidence that Millette offered did not convince the trial justice, nor does it persuade us.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court denying Millette's application for postconviction relief and quash the writ of certiorari that we had issued. The papers associated with this case may be remanded to the Superior Court.

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Kevin M. Millette v. State of Rhode Island. |
| **Case Number** | No. 2015-330-M.P.<br>(PM 14-359) |
| **Date Opinion Filed** | May 17, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Applicant:<br><br>Camille A. McKenna<br>Office of the Public Defender |
| | For State of Rhode Island:<br><br>Lauren S. Zurier<br>Department of Attorney General |