**Reynaldo RODRIGUEZ**

v.

**STATE of Rhode Island.**

**No. 2006–144–Appeal.**

Supreme Court of Rhode Island.

Feb. 4, 2008.

---

**10.** William Shakespeare, Hamlet act 3, sc. 1.

Susan B. Iannitelli, Esq., for Plaintiff.

Aaron L. Weisman, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The applicant, Reynaldo Rodriguez, appeals from the denial of his application for postconviction relief. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in the appeal should not be decided summarily. After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that this case may be decided without the necessity of further briefing or argument. We affirm the judgment of the Superior Court.

### Facts and Procedural History

Mr. Rodriguez was convicted after a jury trial of possession of a controlled substance (heroin) with intent to deliver, possession of drug paraphernalia with intent to deliver, and conspiracy to possess a controlled substance with intent to deliver. The conspiracy conviction later was vacated and the conspiracy count dismissed, and then this Court affirmed the remaining convictions in *State v. Rodriguez*, 798 A.2d 435 (R.I.2002). On October 22, 2002, Mr. Rodriguez applied for postconviction relief, alleging constitutionally ineffective assistance of his trial counsel for failing to call a witness, or, in the alternative, to intro- duce the witness's affidavit or previous testimony. We recount only those facts sufficient for the resolution of this appeal.

The key piece of evidence introduced against Mr. Rodriguez at his trial was a shoe box containing various items associated with the use and distribution of heroin. Laboratory analysis confirmed the presence of heroin residue on the items. The shoe box had been found by Providence police officers, acting pursuant to a search warrant, above a ceiling panel in the shower room of the Rogers Recreational Center. The only named target of the investigation was Leo Cronan, Jr., the director of the Rogers Recreational Center. Fingerprints on the items were identified as belonging to Mr. Rodriguez and a man named Emiliano Pagan.

Mr. Pagan was charged with the same three offenses as were brought against Mr. Rodriguez, and on June 24, 1997, Mr. Pagan pled *nolo contendere* to all three, including the conspiracy count. On March 24, 1998, however, Mr. Pagan executed an affidavit that purported to exculpate Mr. Rodriguez. Further, on July 7, 1998, Mr. Pagan testified at a Superior Court hearing that he had taken the shoe box from a group of youths at the recreation center in the hope of using its contents to make money. Later that day, Mr. Pagan said, he asked Mr. Rodriguez for a ride home, and he placed the box on the front passenger seat of Mr. Rodriguez's automobile while he went back into the recreation center. When he returned, Mr. Rodriguez told him that he had looked through the box and he demanded that Mr. Pagan remove the box. The hearing justice who presided at the hearing at which Mr. Pagan testified described his testimony as "highly incredible."

The thrust of Mr. Rodriguez's postconviction-relief argument was that his trial counsel's failure to present Mr. Pagan's

testimony, either in person or by introducing a transcript of his previous testimony, constituted ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The only witness to testify in support of Mr. Rodriguez's application was his trial attorney, John M. Cicilline. Mr. Cicilline testified that his theory of defense was to portray Mr. Cronan as the person solely responsible for the shoe box and its contents. He explained that Mr. Cronan was the initial target of the police investigation and the sole possessor of the keys to the shower room where the drug paraphernalia were discovered.

Mr. Cicilline acknowledged that his efforts to point the finger at Mr. Cronan, even if successful, did not preclude a finding of guilt against Mr. Rodriguez based upon a theory of joint possession. He also admitted that Mr. Pagan's testimony could have explained how his client's fingerprints innocently got on the shoe box and drug paraphernalia. On cross-examination, however, Mr. Cicilline acknowledged that Mr. Pagan's testimony would have seriously undermined the defense's theory that the evidence strongly indicated that Mr. Cronan owned the paraphernalia.

In her very detailed rescript, the hearing justice noted that Mr. Rodriguez's failure to call Mr. Pagan as a witness at the postconviction-relief hearing deprived the court of any opportunity to determine whether his testimony at the trial would have helped the defense. Even assuming his testimony would be consistent with his affidavit and previous testimony, she was unable to assess its weight and credibility. The hearing justice, therefore, rejected any argument that trial counsel was deficient by not calling Mr. Pagan to testify at trial.

The hearing justice further held that Mr. Rodriguez would not have been able to have Mr. Pagan's affidavit admitted at trial because it had never been authenticated nor were his statements subject to cross-examination. *See Flynn v. Al–Amir,* 811 A.2d 1146, 1152–53 (R.I.2002). Moreover, she said that there was insufficient evidence that Mr. Pagan was unavailable to testify at trial, a necessary predicate to the admission of his previous sworn testimony. She rejected Mr. Rodriguez's suggestion that Mr. Pagan was unavailable because of an outstanding warrant for his arrest on a robbery charge. She noted that Mr. Rodriguez had neither asked him to testify voluntarily nor attempted to subpoena him and said it would be rank speculation to conclude that Mr. Pagan was unavailable to testify at trial.

Moreover, the hearing justice determined that "Mr. Cicilline made a sound tactical decision at the time, with full knowledge of Pagan's affidavit and prior hearing testimony, not to present Pagan as a witness at trial." Significantly, she noted that Mr. Pagan had pled *nolo contendere* to the charge of conspiracy to possess with intent to deliver the very same heroin that was the subject of the charges against Mr. Rodriguez. Also, Mr. Pagan's testimony would not have explained away other incriminating evidence that had been introduced against Mr. Rodriguez at the trial, and it would have been inconsistent with his primary theory that Mr. Cronan alone possessed the paraphernalia. Finally, she observed that Mr. Pagan's testimony at the previous hearing had been found not to be credible and did "not make a lot of sense." In conclusion, the hearing justice determined that Mr. Cicilline conscientiously, after consultation with Mr. Rodriguez, chose to mount the best defense available to him, which she characterized as "not only objectively reasonable under the totality of the circumstances, but sound."

## Standard of Review

Under G.L. 1956 § 10–9.1–1(a)(1), "post-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Young v. State,* 877 A.2d 625, 628 (R.I. 2005). "This Court will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Bustamante v. Wall,* 866 A.2d 516, 522 (R.I.2005) (quoting *Taylor v. Wall,* 821 A.2d 685, 688 (R.I.2003)). "This Court will, however, 'review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Id.*

This Court adheres to the standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when evaluating claims of ineffective assistance of counsel. *Bustamante,* 866 A.2d at 522. Under this test, an applicant must establish two criteria to prevail on such a claim. First, the applicant must "demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Brennan v. Vose,* 764 A.2d 168, 171 (R.I.2001) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). This prong can be satisfied "only by a showing that counsel's representation fell below an objective standard of reasonableness." *Id.* The second criterion of the *Strickland* test requires the applicant to demonstrate prejudice emanating from the attorney's deficient performance such as "to amount to a deprivation of the applicant's right to a fair trial." *Id.* This prong is satisfied only when an applicant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## Discussion

Affording the hearing justice's findings of historical fact the deference to which they are entitled, we are in complete agreement with her ultimate conclusion that Mr. Rodriguez "has fallen woefully short of proving that the conduct of his able trial counsel in not calling Pagan as a witness at trial or presenting his prior sworn hearing testimony was objectively unreasonable * * *."

On the contrary, trial counsel's failure to present Mr. Pagan as a witness or attempt to introduce into evidence the transcript of his previous testimony appears to us to have been a rather sound tactical decision. Mr. Pagan's belated attempt to exonerate Mr. Rodriguez clearly would have undermined the latter's efforts to deflect culpability to Mr. Cronan. Moreover, Mr. Pagan's testimony undoubtedly would have provided the state with fertile opportunities for cross-examination. Not only had Mr. Pagan's credibility been totally discounted at the previous hearing, but he also had an extensive criminal history and had himself pled *nolo contendere* to conspiring with Mr. Rodriguez to possess heroin with intent to deliver, the same offense that was the subject of Mr. Rodriguez's trial—an incident seemingly more incriminating than exculpatory.

This Court has said that it "'will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel.'" *Hampton v. State,* 786 A.2d 375, 382 (R.I.2001) (quoting *Brennan,*

764 A.2d at 173). The decisions Mr. Cicilline made that Mr. Rodriguez now contends were objectively unreasonable and prejudicial are precisely the type of strategic decisions this Court will not second-guess. *See Brennan,* 764 A.2d at 173. We deem them to be tactical decisions clearly within the bounds of what is constitutionally required to constitute effective assistance of counsel.

### Conclusion

For the foregoing reasons, we affirm the judgment denying Mr. Rodriguez's application for postconviction relief and return the papers in the case to the Superior Court.