**Supreme Court**

No. 2011-355-Appeal.
(NM 10-105)

Michael Bell                              :

            v.                            :

State of Rhode Island.                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael Bell                    :

v.                              :

State of Rhode Island.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** On a summer's evening in June 2007, a group of young people assembled at Murphy Field in the City of Newport, not to play baseball, but to watch a fist fight. The pugilists were two young men, one from the City of Newport, and the other from the Town of Middletown. Michael Bell (applicant) was a spectator, along with several of his friends. A brawl broke out among the onlookers. Mr. Bell armed himself with a baseball bat, allegedly to defend a female friend who he thought was being threatened. In the aftermath of this melee, Bell was charged with and later convicted of felony assault.

The applicant appeals from the denial of his application for postconviction relief. Specifically, the applicant argues that the trial justice erred in denying his claim that his trial counsel had provided ineffective assistance by giving him "incorrect legal advice" that "ultimately deprived [him] of the opportunity to consider and accept a favorable plea offer." For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

Among the group that Bell claims was threatening his female friend was one Ian Kerr. Although Bell concedes that Kerr did not physically touch either him or his female friend, Bell struck Kerr in the side of the head with the baseball bat with sufficient force to fracture Kerr's skull.

On October 18, 2007, Bell was arraigned in Newport Superior Court on an information alleging one count of felony assault. Bell was represented by defense attorneys Kevin Dwyer (counsel) and Rebecca Clarke.[1] A bench trial commenced on March 23, 2009 in the Superior Court. At that time, Dwyer discovered that the state intended to call two witnesses whose identities had not been disclosed to him. Attorney Dwyer sought and received a continuance in order to prepare for these new witnesses. The trial justice also ordered that the state obtain written witness statements from the two new witnesses, and continued the trial for nearly two months.

On May 18, 2009, trial resumed and, upon cross-examining one of the new witnesses, Dwyer learned for the first time that the witness had been arrested for vandalizing Bell's truck on the night of the incident. Attorney Dwyer then moved for a mistrial on the basis of this newly discovered evidence. The trial justice ruled that the juvenile records of the witnesses were discoverable, and allowed a further continuance. Trial resumed on June 15, 2009, at which time counsel withdrew his motion for a mistrial.

---

[1] Although Attorney Clarke was co-counsel at applicant's criminal trial, she was not mentioned during applicant's postconviction-relief hearing, and there has been no allegation that she gave ineffective assistance to Bell.

Attorney Dwyer presented two affirmative defenses on Bell's behalf: self-defense and defense of others. On July 1, 2009, the trial justice found Bell guilty of felony assault. Bell's present counsel entered her appearance on his behalf on July 22, 2009, and on July 27, 2009, Dwyer withdrew from the case. On September 10, 2009, Bell was sentenced to fifteen years, with four to serve at the Adult Correctional Institutions, eleven years suspended and eleven years probation. Bell initially appealed this decision, but later withdrew that appeal.[2]

On February 24, 2010, Bell filed an application for postconviction relief. A hearing was held on November 8 and December 16, 2010 before the same justice as had presided over the trial. Bell, his mother, and Dwyer were the only witnesses who testified. On May 10, 2011, the trial justice filed a written decision denying Bell's application for postconviction relief. On May 20, 2011, applicant filed a notice of appeal. Final judgment was entered by the court on September 21, 2011.[3]

## II

### Standard of Review

In Rhode Island, "post-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011) (quoting Gordon v. State, 18 A.3d 467, 473 (R.I. 2011)). This Court has previously stated that we "will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material

---

[2] The applicant asserts that he withdrew the appeal of his conviction because "[d]efense [c]ounsel had failed to preserve the significant appellate issues involved." We have not been apprised of those issues.

[3] Although applicant filed this appeal prior to the entry of final judgment, this Court will treat applicant's premature appeal as timely. See Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011).

evidence in arriving at those findings." Id. (quoting Gordon, 18 A.3d at 473). We will, however, "review de novo any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." Id. (quoting Gordon, 18 A.3d at 473).

In evaluating an application for postconviction relief based on a claim of ineffective assistance of counsel, "[t]his Court adheres to the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 * * * (1984) * * *." Chapdelaine, 32 A.3d at 941 (quoting Rodriguez v. State, 941 A.2d 158, 162 (R.I. 2008)). To prevail on such a claim, the petitioner must satisfy the two prongs of the Strickland test: "[f]irst, the applicant must demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." Id. (quoting Rodriguez, 941 A.2d at 162). "This prong can be satisfied only by a showing that counsel's representation fell below an objective standard of reasonableness." Id. (quoting Rodriguez, 941 A.2d at 162). The second prong of Strickland "requires the applicant to demonstrate prejudice emanating from the attorney's deficient performance such as to amount to a deprivation of the applicant's right to a fair trial." Id. (quoting Rodriguez, 941 A.2d at 162). "This prong is satisfied only when an applicant demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 941-42 (quoting Rodriguez, 941 A.2d at 162)).

## III

### Discussion

The applicant argues that he was deprived of his constitutional right to effective assistance of counsel because his attorney gave him "incorrect legal advice," which robbed him

of the opportunity to consider and accept a plea offer. The state counters that applicant cannot show that the prosecution ever made a plea offer, much less that he would have accepted it, given his stated desire to join the military. Further, the state contends that the trial justice would not have accepted a less than jail disposition because the sentencing benchmarks would assign some jail time.

An applicant bringing a claim of ineffective assistance of counsel can prevail only if he or she can meet both prongs of the test articulated in Strickland. See Rice v. State, 38 A.3d 9, 14 n.7 (R.I. 2012). Accordingly, we will address each prong separately.

**A**

**Objective Standard of Reasonableness**

Under the first prong of Strickland, 466 U.S. at 687, "the [applicant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." "[T]he [applicant] must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. This Court has stated that applicants seeking postconviction relief due to ineffective assistance of counsel are "saddled with a 'heavy burden,' in that there exists 'a strong presumption [recognized by this Court] that an attorney's performance falls within the range of reasonable professional assistance and sound strategy * * *.'" Rice, 38 A.3d at 17 (quoting Ouimette v. State, 785 A.2d 1132, 1138-39 (R.I. 2001)).

On appeal, Bell argues that counsel gave him "inaccurate advice" by telling him he had a "clear-cut" case of defense of another and that he "would not serve jail time." The applicant asserts that, because of that advice, he did not have the opportunity to entertain a favorable plea agreement. Bell does not appear to argue that counsel's trial performance amounted to

ineffective assistance but, rather, that counsel's understatement of the risks involved in going to trial prevented him from making an informed decision at the outset to avoid trial by entering a plea agreement.[4]

Bell argues that his decision to go to trial was based on "incorrect advice"; however, at his postconviction-relief hearing he admitted that, from the beginning, he did not want to "take any offer" because he wanted to join the military.[5] Attorney Dwyer testified that his client wanted to go "to trial because he wanted to go into the military, he wanted to clear his name, and he felt that his actions were justified under the circumstances, and I agreed with him."

Unlike the cases upon which applicant relies, in which either a plea offer was not conveyed to the defendant, or its merits were not adequately discussed, in this case, there is no evidence that any plea arrangement was even offered. See, e.g., Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012); Commonwealth v. Napper, 385 A.2d 521, 524 (Pa. Super. Ct. 1978). On the contrary, counsel testified that he did not actively pursue a plea disposition "because [he] was told in no uncertain terms [that they were] going to trial, so [he] remember[ed] being in chambers * * * and [he] remember[ed] saying something to the effect that, 'Let's not even talk about a plea deal because he's not taking a deal. He wants to go to trial.'"

Pursuant to Article V, Rule 1.2(a) of the Supreme Court Rules of Professional Conduct, "[i]n a criminal case, the lawyer shall abide by a client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." Counsel unquestionably abided by his client's decision in this case, and Bell now argues that

---

[4] The recent United States Supreme Court opinion in Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012), reiterated that criminal defendants are entitled to competent counsel during plea negotiations.

[5] Apparently, defendant was concerned that a felony conviction would render him ineligible for military service.

counsel underestimated the chance that he would be found guilty at trial and failed to advise him of the possible sentence he would face if convicted. Therefore, Bell asserts that his decision to go to trial was not an informed one.

Bell testified that he had met with counsel in person approximately twelve times, in addition to having contact with him by telephone and email. Bell admitted during his postconviction-relief hearing that counsel had explained to him the affirmative defenses of self-defense and defense of others, but he denied that counsel had ever advised him that, if he were to be found guilty, it was possible he could receive a jail sentence. However, Bell did admit that, when he went to trial, he knew that he could go to jail. Attorney Dwyer testified that, while he did not have a specific recollection of a particular conversation with Bell, it was his regular practice to "tell [clients] the upside [and] the downside[:] * * * the downside is there's always a possibility of going to jail to the maximum * * *."

The applicant testified that, prior to trial, he would not have accepted a plea to a felony, even if it did <u>not</u> involve a jail term, explaining that, because he "really wanted to go in the Army, [he] didn't want to take a felony charge." Not only was there never such an offer, but the hearing justice recalled that, "[i]n the pre-trial chambers conference, it was clear that a plea to a non-jail disposition would not be offered and that the [c]ourt would not accept one, in any event, because Benchmark 10 assigns a four to five year sentence to the offense of felony assault."

"[A] choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard." State v. D'Alo, 477 A.2d 89, 92 (R.I. 1984) (quoting United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)). "To state and prove a claim under this standard, [an applicant] must allege and demonstrate that his counsel's error clearly 'resulted from neglect or ignorance rather

than from informed, professional deliberation.'" Id. (quoting Bosch, 584 F.2d at 1121). Here, Bell admitted that he thought counsel "did a good job" before he was convicted. It was only after trial that Bell's opinion of counsel changed, at which point he decided "[counsel] didn't do a good job at the end." When asked at his postconviction hearing whether "this whole thing is about the fact that you don't like the outcome of [the trial]," Bell responded "[y]eah, I guess."

It may well be true that, had Bell known that he would be convicted and sentenced to a fifteen-year term with four years to serve, he may have put aside his hopes for a military career in favor of pursuing a shorter prison term. However, effective assistance of counsel does not involve the ability to accurately predict the future. It is sufficient that counsel informed Bell of his options and then abided by his client's choice to go to trial. Although he now concedes that the use of deadly force was unjustified, according to counsel, at the time of trial, Bell believed he had been defending others and himself. Counsel pursued the affirmative defenses based on what the trial justice characterized as "a sincere and reasonable belief * * * that Bell had a viable self/third party defense * * *." We can discern no error in the trial justice's determination that Dwyer provided "capable, competent and intelligent advocacy" to applicant.

**B**

**Prejudice**

"Prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." Larngar v. Wall, 918 A.2d 850, 856 (R.I. 2007) (quoting State v. Figueroa, 639 A.2d 495, 500 (R.I. 1994)). Although we have found that the first prong of Strickland has not been met, we note that, in any case, the applicant cannot meet this second prong of Strickland because he cannot show that any plea offer was forthcoming, much less that he would have accepted it, given his stated desire to avoid a

felony conviction in order to join the military. To prove prejudice, the applicant would need to pile supposition upon supposition: (1) that, had counsel sought to open plea negotiations, the state would make a favorable offer; (2) that the applicant would have accepted an offer that, of necessity, would have required him to plead guilty to a felony, thus presumably preventing him from joining the military; (3) that the offer would have been approved by the court; and (4) that the offer would have resulted in a shorter prison term than the four years the applicant is presently serving. Postconviction relief cannot rest on such a tenuous basis. In short, the applicant could not prove that he was prejudiced in any way by counsel's performance.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of this case shall be remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Michael Bell v. State of Rhode Island.

**CASE NO:**   No. 2011-355
(NM 10-105)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   June 18, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**   Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Melanie Wilk Thunberg

**ATTORNEYS ON APPEAL:**

For Applicant:  Katherine Godin, Esq.

For State:  Aaron L. Weisman, Esq.
Department of the Attorney General