Anthony Lipscomb                    :

          v.                        :

State of Rhode Island.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Anthony Lipscomb :

v. :

State of Rhode Island. :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The applicant, Anthony Lipscomb, appeals from the denial of his application for postconviction relief. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

The applicant first initiated his postconviction-relief proceedings in 2009, when he filed an "omnibus pro-se motion." The applicant's motion was neither sworn nor verified as required by G.L. 1956 § 10-9.1-3; therefore the Superior Court issued an order staying the postconviction-relief proceedings until applicant filed a complaint in the proper form. On July 20, 2012, applicant filed an amended application for postconviction relief—sworn and verified—asserting that his convictions in four separate drug-offense cases were the result of ineffective assistance

of counsel in violation of the state and federal constitutions because he had pled nolo contendere in each case rather than either pursuing a motion to suppress physical evidence or going to trial.

A justice of the Superior Court held a hearing on the postconviction-relief application in February 2013. The three attorneys who had represented applicant in the four cases at issue each testified. The applicant could not testify in person because he was incarcerated in a federal prison located out of state, but he had been deposed in January 2013 by telephone and this deposition testimony was admitted as an exhibit to the postconviction-relief proceedings. During the closing argument, applicant's counsel withdrew one of the four cases included in his postconviction-relief application because, in applicant's deposition testimony, he had discussed a series of facts that were not consistent with that case. The travel of the three remaining cases as well as the testimony from applicant and the attorney who represented him in each case are summarized below.

**A**

**2000 Conviction (Case No. P2/00-1178A)**

On March 1, 2000, applicant was arrested after police responded to a call that a passenger in a white Mercury Sable with registration plate IU-72 had been seen holding a shotgun. Just a few days before, the police had received a report that a gun had been fired into a vehicle from a white Mercury Sable; the complainant had claimed that this vehicle belonged to applicant. When applicant was strip-searched at the police station after his arrest, a bag of marijuana and some small bags of cocaine fell from between his legs. The applicant was charged with one count of possession of cocaine and one count of possession of marijuana. On October 2, 2000, applicant pled nolo contendere to possession of cocaine and marijuana and was sentenced to two years, suspended, with probation.

In his application for postconviction relief, applicant claimed that he had been denied his constitutional right to the effective assistance of counsel and alleged that he had pled nolo contendere without being advised that a motion to suppress the items seized from his person could have been viable had the issue been raised. At the hearing, attorney Scott Lutes, who represented applicant in this case, testified that his review of the postconviction-relief application "vaguely" refreshed his recollection regarding his representation of applicant, but that he "represent[ed] probably 200 people a year, [which was] a lot of cases to distinguish from." Mr. Lutes, however, "recall[ed] [applicant] because [he] [had] represented him several times." Mr. Lutes testified that he "always" considered potential grounds for alleging unconstitutional search and seizure and whether to file a motion to suppress, and that he would "go over a case with a client and discuss the legal issues, the pros and cons of pursuing this avenue or that avenue, and ultimately the client ma[de] the decision [about] what they want[ed] to do." While Mr. Lutes did not specifically recall either this case or having had such a conversation with applicant, he did recall that "we had a conversation with the clerk's office when he was charged, and I showed him it was only charged as a simple possession charge, and he was happy with that because he didn't feel he had the same potential going to jail [sic] for that." Mr. Lutes testified that his "vague recollection * * * was that [applicant's] primary focus was on * * * wrapping everything up for a concurrent sentence and [applicant] was satisfied that it wasn't a possession with intent charge * * * and didn't want to pursue the issues and go[] to trial." According to Mr. Lutes, he "never made a client plead to something. Even if they're hesitant, [he would] continue it * * *, and [he] [did not] recall that being an issue in this case at all."

During his deposition, applicant testified that, while he had not asked Mr. Lutes any questions about the legality of the search, "now that [he had] a little understanding in regards to

- 3 -

the law * * *," he would have "definitely" proceeded with a motion to suppress if Mr. Lutes had told him that there were grounds for such a motion. The applicant also testified that his communication with Mr. Lutes during the case occurred "during court proceedings" and that he had not "really sat down with him and discussed the case in length in its totality at all, * * * to * * * review [his] options." The applicant also testified that he could not recall any specific conversations with Mr. Lutes regarding his case or whether Mr. Lutes spoke with him about the case, "but [he was] leaning more toward" Mr. Lutes not having spoken with him regarding the defense strategy.

## B

### 2002 Conviction (Case No. P2/01-1539A)

On April 13, 2001, applicant was pulled over for speeding on interstate 95. The applicant produced his driver's license and a bill of sale for the car that was dated that day. According to the police narrative attached to the criminal information filed in this case, while the state trooper was checking applicant's driver's license, he recalled that he had stopped the same individual the week before in the same vehicle and that applicant had also handed him a bill of sale for that same vehicle that had reflected that day's date. After the state trooper ran a license check, he discovered that applicant had been previously arrested on drug charges. The trooper asked applicant whether he had bought the vehicle that day; applicant replied in the affirmative. The trooper also asked whether applicant had ever been arrested, and applicant answered in the negative. The applicant exited the vehicle upon request; after additional questioning, the state trooper searched him. The state trooper found marijuana in the pocket of applicant's underwear.

In May 2001, applicant was charged with possession of marijuana, subsequent offense. On April 23, 2002, applicant pled nolo contendere to that charge and was referred to the drug

court treatment program. The applicant did not successfully complete the drug court treatment program, and was ultimately sentenced on January 29, 2003, to two years incarceration, with four months to serve and twenty months suspended, with probation.

In his postconviction-relief application, applicant claimed that, if his attorney, Matthew Smith, had advised him that he could have filed a motion to suppress the evidence seized from him during the traffic stop, he would not have pled nolo contendere. At the hearing, Mr. Smith testified that he did not have an independent memory of applicant's case, but that reading the police report in the case had refreshed his recollection of the facts. Mr. Smith had entered his appearance for applicant on three separate cases at the same time: two probation violations and the new drug charge. Mr. Smith stated that he discussed proposed resolutions of applicant's cases with either the drug court personnel or a representative from the Attorney General's office and that these discussions factored into his strategy in representing applicant. The applicant faced the possibility of serving up to two years on each probation violation as well as on the new charge, but Mr. Smith secured applicant's participation in the then-fledgling drug court treatment program. Mr. Smith testified that he believed that the drug court program was the best option for applicant because it could help him with his addiction as well as serve as a mechanism to potentially have both the new case dismissed and the probation violation petitions withdrawn by the Attorney General's office. Mr. Smith also testified that it was his standard practice to discuss any legal issues he identified when he read a police report as well as "issues such as a motion to suppress a statement or suppress a search and seizure with [his] client." Mr. Smith was "certain * * * that [he] would have discussed the * * * issue and other issues of all aspects of that case with [applicant]."

In his deposition testimony, applicant stated that Mr. Smith had not told him that a motion to suppress might have kept the drugs seized during the traffic stop out of evidence. The applicant also asserted that he would have proceeded with the motion to suppress had it been brought to his attention but also that he could not recall whether he had told Mr. Smith at the time that he thought something was wrong with the search. According to applicant, he "could have" mentioned it "because it did seem like there was something wrong with it; but * * * looking at the * * * intrusions of just being pulled over, searched * * * [he] [thought] [he] was pretty much focused on that more as a profiling type of thing * * *."

## C

### 2003 Conviction (Case No. P2/02-2748B)

According to a police narrative attached to the criminal information in this case, an arrest warrant was sought for applicant in September 2002 after an investigation into narcotics trafficking at two apartments yielded evidence to support drug charges against him. The applicant was charged with conspiracy to possess marijuana with intent to deliver (count 2), possession of marijuana with intent to deliver (count 3), and possession of cocaine with intent to deliver (count 4). On October 20, 2003, the state dismissed counts 3 and 4 pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure in exchange for applicant's nolo contendere plea on count 2, which had been amended to simple possession of marijuana. On the Rule 48(a) dismissal stipulation, the state noted that it was unable to disclose the identity of the confidential informant involved in the case and that the scope of the search warrant obtained had been exceeded during its execution; the marijuana and scale seized had been found in an area that was not within the scope of the search warrant. The applicant was sentenced to a one-year

term of supervised probation, to run concurrently with the term of probation imposed after the April 23, 2002 plea.

In applicant's postconviction-relief application, he claimed constitutionally deficient performance by his attorney, Richard Corley, in this case because the state would not disclose the identity of the confidential informant used to secure the search warrant that had been executed prior to applicant's arrest, and applicant alleged that his attorney both knew that the state did not have any witnesses to connect him to the drugs seized and misled applicant to believe that the state did have such witnesses. At the hearing, Mr. Corley testified that he did not have an independent recollection of representing applicant, but that he had reviewed the case file and the information package prior to the hearing. Mr. Corley testified that he had attempted to discover the identity of the confidential informant involved in the case by filing a motion to compel the state's disclosure of the informant's identity. Mr. Corley also testified that, "after having reviewed the evidence, that the evidence tying [applicant] in to the charges for which he was facing was minimal, and [he] believe[d] in such a situation [his] comments with [applicant] would have been about the lack of evidence concerning inculpatory evidence against him." Mr. Corley also testified that the disposition in the case was "the best disposition that [he] could have received, other than a not guilty verdict, based upon [applicant's] previous record * * *." Mr. Corley stated that he conveyed "all offers that [were] made from the prosecution, whether [he] [thought] they [were] in [his] client's best interest or not to take them," and that "[he] may have advised somebody that [he thought] it's in their best interest to enter a plea rather than go to trial, but [he told] the client that it is always their choice."

During his deposition, applicant testified that, many years after his conviction in this case, he had written to the Superior Court and requested copies of the documents in his case file.

Upon review of the documents that he received as a result of this request, applicant concluded that the state never had a confidential informant. The applicant testified that, at the time of his plea, he had believed that there was a confidential informant involved in the case, but after reviewing the court documents he thought that Mr. Corley had known there was not an informant involved and had not told him. Had applicant known, he asserts, he would have gone to trial. The applicant also testified, however, that Mr. Corley had discussed the facts of the case with him and had filed motions, including a motion to suppress, a motion to dismiss, and a motion for bail review. According to applicant, Mr. Corley "did go a little further than the previous * * * attorneys; and we just did what he suggested at the time."

With respect to all three of his nolo contendere pleas, applicant testified that, based on the information he had at the time of the pleas, he knew what he was doing when he pled, "but, in accordance to what I'm telling you today, we know that I did not know what I was doing."

**D**

**Hearing Justice's Decision**

On June 20, 2013, the hearing justice issued a written decision denying applicant's postconviction-relief application in its entirety. The hearing justice stated that, in order to prevail, applicant had to prove that attorneys Lutes and Smith had not advised him of the benefits of challenging the seizure of drugs from his person and, with respect to the third case, applicant had to prove that Mr. Corley had not informed applicant that the confidential informant had not existed or that he had misled him about the confidential informant's existence. Ultimately, the hearing justice concluded that applicant had failed to prove that any of his attorneys' performances were constitutionally deficient in any way because none of these experienced attorneys committed any "professional errors" in their representation of applicant. The hearing

justice also found the attorneys' testimony credible, whereas applicant's testimony was not credible. The hearing justice noted that applicant initially decided to file for postconviction relief on the ground of ineffective assistance of counsel after he learned that the federal government had sought to enhance his term of federal incarceration based on the state court convictions, and the hearing justice factored this finding into his credibility analysis.[1]

With respect to attorney Lutes' representation, the hearing justice specifically noted that Mr. Lutes had testified that he had a habit of discussing the strength of cases with his clients and that applicant could not explain why he had not met with Mr. Lutes between court dates to discuss the case strategy despite the fact that he had been released on bail during the six months between his arraignment and his plea. The hearing justice also found that the facts summarized in the police narrative attached to the criminal information in this case supported a finding that applicant had been lawfully arrested and that "an experienced attorney * * * could objectively conclude a court would find the search to be a legal search incident to an arrest and deny a motion to suppress."

With respect to attorney Smith's representation, the hearing justice found that the main issue was whether Mr. Smith had discussed the viability of a motion to suppress with applicant. The hearing justice noted that Mr. Smith was "certain" that he had discussed the issue with

---

[1] In October 2005, applicant was found guilty in the United States District Court for the District of Rhode Island of possession of at least five grams of cocaine with intent to distribute, "possession of a firearm in furtherance of a drug trafficking crime," and possession of a firearm as a felon. United States v. Lipscomb, 539 F.3d 32, 35 (1st Cir. 2008). The United States Court of Appeals for the First Circuit affirmed his conviction in August 2008. Id. at 43. The applicant is currently serving fifteen years in a federal prison; this sentence reflects two ten-year concurrent sentences on the first and third counts, and a five-year sentence on the second count, to run consecutively to the sentences imposed for the first and third counts. According to applicant, the ten-year sentence on the first count was determined in part by considering his criminal history in the state court.

applicant and that he found Mr. Smith's testimony to be credible, whereas applicant testified incredibly that Mr. Smith had not discussed at all the possibility of filing a motion to suppress.

With respect to attorney Corley's representation, the hearing justice noted that applicant had three prior possession-of-marijuana convictions at the time he was charged in this case, and "that this matter was resolved by amendment to simple possession of marijuana in and of itself should qualify as a minor miracle and does bear favorably on the effectiveness of [Mr. Corley] * * *." With respect to applicant's allegation that Mr. Corley had misled him regarding the existence of the state's informant, the hearing justice concluded that the allegation did not have merit because applicant had not pointed to a specific misrepresentation by Mr. Corley. The hearing justice concluded that the only basis for applicant's supposition that the informant had not existed was that the Rule 48(a) dismissal stipulation noted "unable to disclose CI" and that this inability to disclose the informant's identity was not the same as the state admitting that the informant had not existed.

The hearing justice also briefly discussed whether applicant had established that he was prejudiced by his attorneys' alleged deficient performances, concluding that "[e]ven if the court accepted all of [applicant's] testimony [that he would have proceeded to trial if he had known what he claimed his attorneys did not tell him] as totally credible, this testimony standing alone d[id] not demonstrate a reasonable probability that his motion(s) to suppress would have been successful." The hearing justice entered final judgment on July 11, 2013, from which applicant is now appealing.[2]

---

[2] Because the final judgment denying applicant's postconviction-relief application entered in 2013, applicant's appeal from this judgment is properly before us on direct appeal. The 2015 amendment to G.L. 1956 § 10-9.1-9, requiring an aggrieved party to seek review by filing a petition for writ of certiorari with this Court, became effective on June 19, 2015—long after applicant filed his notice of appeal. See P.L. 2015, ch. 91, § 1.

- 10 -

## II

## Standard of Review

"[P]ost[]conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." Bell v. State, 71 A.3d 458, 460 (R.I. 2013) (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)). "This Court has previously stated that we 'will not disturb a [hearing] justice's factual findings made on an application for post[]conviction relief absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings.'" Id. (quoting Chapdelaine, 32 A.3d at 941). In addition, we will not disturb a hearing justice's credibility determinations unless the applicant can demonstrate that the hearing justice was clearly wrong. Guerrero v. State, 47 A.3d 289, 299 (R.I. 2012). "We will, however, 'review de novo any post[]conviction[-]relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" Bell, 71 A.3d at 460 (quoting Chapdelaine, 32 A.3d at 941). "Even when applying the de novo standard of review to such issues, however, 'we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference * * *.'" Jolly v. Wall, 59 A.3d 133, 138 (R.I. 2013) (quoting Anderson v. State, 45 A.3d 594, 601 (R.I. 2012)).

## III

## Discussion

The applicant argues before this Court that the hearing justice erred by concluding that applicant failed to prove that the performances of the three attorneys were constitutionally deficient. With respect to Mr. Lutes, applicant contends that the hearing justice overlooked and misconceived "critical evidence" because he asserts that Mr. Lutes provided "inconsistent

testimony" about whether he had discussed the possibility of a motion to suppress with applicant; Mr. Lutes first testified that he could not recall and then testified to a "vague recollection" that applicant had not wanted to pursue a motion to suppress. With respect to Mr. Smith, applicant contends that the hearing justice erred by concluding that applicant's testimony corroborated Mr. Smith's testimony that they had discussed a motion to suppress because applicant clearly alleged in his postconviction-relief application that he had not been made aware that a motion to suppress could have been filed. Instead, applicant asserts that Mr. Smith's testimony was inconsistent in the same way as Mr. Lutes' testimony; Mr. Smith initially testified to a lack of memory about applicant's case and then testified that there had been a discussion regarding a motion to suppress. With respect to Mr. Corley, applicant contends that the hearing justice erred by interpreting the language on the Rule 48(a) dismissal stipulation that the state was "unable to disclose" the confidential informant's identity as not meaning that the state conceded that the informant had not existed. The applicant contends that he pled nolo contendere without knowing that the informant ostensibly involved in the case would not be testifying against him because Mr. Corley had not advised him about this information on the Rule 48(a) dismissal stipulation. The applicant also suggests that this case should be remanded to provide him with the opportunity to present additional evidence regarding the prejudice he experienced as a result of his attorneys' deficient performances.

The state argues that this Court should affirm the denial of applicant's postconviction-relief claims because applicant has not demonstrated that the hearing justice erred in finding the three attorneys credible and applicant's testimony not credible. The state contends that the hearing justice neither overlooked nor misconceived any of the testimony at the hearing. Without credible evidence to support applicant's claims that attorneys Lutes and Smith had not

discussed the possibility of a motion to suppress with him and that attorney Corley had not informed him that the confidential informant was not available or had not existed, the state contends that applicant failed to establish that his attorneys' representations were constitutionally deficient.

Rhode Island's postconviction remedy is set forth in G.L. 1956 chapter 9.1 of title 10. Because "[a]ll rules and statutes applicable in civil proceedings" apply to postconviction-relief proceedings, § 10-9.1-7, "[a]n applicant * * * for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." Jolly, 59 A.3d at 138 (quoting Anderson, 45 A.3d at 601). "In evaluating an application for postconviction relief based on a claim of ineffective assistance of counsel, '[t]his Court adheres to the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).'" Bell, 71 A.3d at 460 (quoting Chapdelaine, 32 A.3d at 941). We have previously noted that "applicants seeking postconviction relief due to ineffective assistance of counsel are 'saddled with a heavy burden, in that there exists a strong presumption [recognized by this Court] that an attorney's performance falls within the range of reasonable professional assistance and sound strategy * * *.'" Id. at 461 (quoting Rice v. State, 38 A.3d 9, 17 (R.I. 2012)).

To prevail on a claim for ineffective assistance of counsel, "the [applicant] must satisfy the two prongs of the Strickland test: '[f]irst, the applicant must demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment.'" Bell, 71 A.3d at 460 (quoting Chapdelaine, 32 A.3d at 941). "This prong can be satisfied only by a showing that counsel's representation fell below an objective standard of reasonableness." Id. (quoting Chapdelaine, 32 A.3d at 941). "Th[is] Court will reject an allegation of ineffective assistance of counsel 'unless a

defendant can demonstrate that counsel's advice was not within the range of competence demanded of attorneys in criminal cases * * *.'" Rodrigues v. State, 985 A.2d 311, 315 (R.I. 2009) (quoting Moniz v. State, 933 A.2d 691, 697 (R.I. 2007)). "The second prong of Strickland 'requires the applicant to demonstrate prejudice emanating from the attorney's deficient performance such as to amount to a deprivation of the applicant's right to a fair trial.'" Bell, 71 A.3d at 460 (quoting Chapdelaine, 32 A.3d at 941). "This prong is satisfied only when an applicant demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Chapdelaine, 32 A.3d at 941-42).

After carefully reviewing the record, we agree with the hearing justice that applicant received effective assistance of counsel from all three attorneys. Each attorney testified that his standard practice was to consider any suppression issues whenever he represented a criminal defendant. Each attorney also testified that he did not have an independent recollection of applicant's case, but that a review of the criminal information package for the pertinent case had jogged some details in his memory. For example, Mr. Lutes recalled applicant's expression of relief upon learning that he had not been charged with a more serious crime and that applicant had seemed focused on securing concurrent sentences for the two charges. Mr. Smith recalled that the drug court treatment program had the potential to yield the best outcome for applicant because applicant would benefit from the substance-abuse treatment and, if applicant had successfully completed the program, then his two pending probation violation proceedings would have been withdrawn and the current drug charge would have been dismissed. Mr. Corley recalled that, given applicant's record at the time that he represented him, the nolo contendere plea to the amended charge of simple possession of marijuana was a favorable disposition

- 14 -

considering the conspiracy count and possession-with-intent-to-deliver counts that had been initially charged.

For his part, applicant testified that attorneys Lutes and Smith had not discussed with him the possibility of a motion to suppress, but he also said that he could not recall the specific conversations that he had had with these attorneys prior to his nolo contendere pleas. With respect to attorney Lutes, applicant testified that, in hindsight, he would have pursued a motion to suppress if he had been advised that it was possible to challenge the search that yielded the bags of marijuana and cocaine and that, although he could not recall any specific conversation, he was "leaning more toward" not having had any conversations with Mr. Lutes regarding the defense strategy in the case. With respect to attorney Smith, applicant stated that, when the case was pending, he had not considered any potential problems with the search because he believed that his traffic stop was the result of profiling. With respect to attorney Corley, applicant asserted that his postconviction review of the case file revealed that Mr. Corley had known that a confidential informant never existed and misled him about the informant's existence, but applicant did not provide a specific basis for these allegations or any evidence to support these allegations.

Confronted with contradicting versions of each attorney's actions and discussions—or lack thereof—with applicant, the hearing justice determined that each attorney's testimony was more credible than applicant's testimony. After examining the testimony at the postconviction-relief hearings, we discern no basis for concluding that the hearing justice was clearly wrong in these credibility determinations. See Guerrero, 47 A.3d at 299; Rice, 38 A.3d at 17 n.11. In addition, it is our opinion that applicant failed to prove that any of the three attorneys committed any professional errors in their respective representations of applicant. When, as here,

- 15 -

approximately ten years have passed since the attorneys represented applicant and the attorneys have represented numerous defendants since applicant's respective cases, we cannot fault the attorneys' limited independent recollections of their specific representation of applicant. The few details that each attorney recalled, their testimony regarding their standard practices, and the favorable dispositions that each attorney secured for applicant indicate that their representations fell well "within the range of competence demanded of attorneys in criminal cases * * *." See Rodrigues, 985 A.2d at 315 (quoting Moniz, 933 A.2d at 697).

Because we agree with the hearing justice's conclusion that applicant failed to meet the first prong of the Strickland analysis, we need not examine the second prong. Strickland, 466 U.S. at 697. Nevertheless, we have previously noted that, when a conviction follows from a negotiated plea, in order to "demonstrate prejudice emanating from the attorney's deficient performance such as to amount to a deprivation of the applicant's right to a fair trial," Bell, 71 A.3d at 460 (quoting Chapdelaine, 32 A.3d at 941), the applicant "must show that he would have insisted on going to trial and that the outcome of that trial would have been different." Neufville v. State, 13 A.3d 607, 614 (R.I. 2011). This burden is almost insurmountable when, as in the case at bar, the attorney negotiated a shorter sentence than the sentence applicant could have received if he had gone to trial. See id.

Here, it is apparent that applicant received three favorable dispositions. In 2000, applicant was sentenced to two years, suspended, and his attorney recalled that applicant had been relieved that the state had not charged him with intent to deliver the marijuana and cocaine seized from his person and that he received concurrent sentences. In 2002, after failing to complete the drug court treatment program that would have resulted in the withdrawal and dismissal of the charges against him, applicant was ultimately sentenced to two years

incarceration with four months to serve. He had originally faced two years incarceration on each of the probation violation allegations as well as on the new drug charge. In 2003 applicant was sentenced to a one-year term of supervised probation after his initial charges included two counts of possession with intent to deliver and one count of conspiracy to possess with the intent to deliver a controlled substance. The applicant would be unable, therefore, to establish the second prong of the Strickland analysis even if he had overcome the obstacle of the first, and we decline his invitation to remand for further evidence regarding prejudice.

We also note that this Court has frequently been called upon to review postconviction-relief decisions that stemmed from a criminal defendant's attempt to vacate state court convictions that subsequently led to sentencing enhancements in another court. See, e.g., Armenakes v. State, 821 A.2d 239, 241 n.1 (R.I. 2003). Here, the applicant testified that his state court convictions were used as a basis for an enhancement in his federal-conviction sentencing, and the hearing justice concluded that this enhancement served as the impetus for the applicant to challenge the three state convictions at issue in this appeal. Hindsight has clearly revealed the far-reaching collateral consequences of his nolo contendere pleas. In our opinion, however, the applicant received three favorable dispositions considering the initial charges in each case, which clearly demonstrates the effective assistance provided by his attorneys.

## IV

### Conclusion

For the reasons stated herein, we hold that the applicant has not demonstrated that he received ineffective assistance of counsel from either attorney Lutes, attorney Smith, or attorney Corley. We therefore affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

- 17 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Anthony Lipscomb v. State of Rhode Island.

**CASE NO:**  No. 2015-45-Appeal.
(PM 10-3377)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  June 24, 2016

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Edward C. Clifton

**ATTORNEYS ON APPEAL:**

For Applicant:  Camille A. McKenna
Office of the Public Defender

For State:  Christopher R. Bush
Department of Attorney General